**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re: WILLIAM RAFTER, Debtor

    Chapter 7
    Case No. 05-51335 (RTL)

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

BUCHANAN INGERSOLL & ROONEY, P.C.
Tod S. Chasin, Esq.
(Attorneys for Gregory A. Pearson and
Alan Lloyd Gough as Joint Receivers and Managers
for Bellew Mortgage Ltd.)

CIARDI & CIARDI, P.C.
Albert A. Ciardi, III, Esq.
Dmitri L. Karapelou, Esq.
(Attorneys for Debtor William Rafter)

**RAYMOND T. LYONS, U.S.B.J.**

William Rafter ("the Debtor") objects to the proof of claim filed by Gregory A. Pearson and Alan Lloyd Gough, Receivers of Bellew Mortgage, Ltd. ("Bellew"). The Debtor contends that the entire claim in the amount of $4,439,009.00 should be disallowed because the claim lacks sufficient supporting details and could be re-characterized in such a manner as to negate his liability to Bellew. The Debtor also attempts to argue that because Bellew owes him money or is owed money from other third parties the claim is invalid. Because the Debtor has failed in his burden to produce evidence overcoming the *prima facie* validity of Bellew's claim, the Debtor's objection is overruled.

**JURISDICTION**

This court has jurisdiction of this contested matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

**FINDINGS OF FACT**

The Debtor was involved in the foundation and operation of several legal entities now appearing as creditors in the proceedings before this court.  Oracle was a mutual fund operating out of the Bahamas, until it was unable to meet the claims of its investors and entered liquidation in the Bahamas in July of 2000.  The Debtor served as promoter for Oracle, raising over $200 million from investors.  Oracle, in turn, loaned funds to Breen Capital Holdings, and its affiliates ("the Breen Entities").  The Breen Entities were New Jersey companies in the business of acquiring tax liens sold by local government entities.  Bellew and another company owned by the Debtor received approximately $10 million in compensation for facilitating transfers of funds from Oracle to the Breen Entities.  Soon after Oracle was placed in liquidation in the Bahamas, Bellew was placed in receivership in the Isle of Man.

Bellew is an Isle of Man company formed in December 1997, at the Debtor's request, by Caledonian Trust (IOM) Limited ("Caledonian Trust").  The Debtor is the sole beneficial shareholder of Bellew.  The Debtor and Caledonian Trust also signed an agreement by which Caledonian Trust was obligated to provide Bellew with "the services of one or more Directors of the Company" for the purpose of preparing all "corporate records of the Company".

The agreement explicitly stated, however, that any actions taken by employees of Caledonian Trust serving as Directors of Bellew were subject to the recommendation or advice of the Debtor. The Debtor's control over the employees of Caledonian Trust serving as Directors of Bellew was reiterated in the Declaration of Trust.

Through its court-appointed receivers, Bellew filed a proof of claim based upon the Debtor's alleged failure to repay a shareholder loan listed in Bellew's 2003 financial statement in the amount of $4,349,009.00. The financial statement was signed by the directors of Bellew, attested to as being accurate and duly approved at a meeting of the Bellew board of directors. While the financial statement did not provide any details surrounding the shareholder loan line item, statements from Caledonian Bank, Bellew's principal bank, show numerous transfers between Bellew and the Debtor occurred from 1998 to 2002. As the amount of the loan remains unpaid, Bellew seeks recovery in this proceeding.

The Debtor responds with several arguments. First, the Debtor contends the claim is invalid as there is insufficient detail to support the claim amount. Second, the Debtor argues that the claim was improperly characterized as a shareholder loan as opposed to another form of transfer that would negate the Debtor's liability to Bellew. Third, the Debtor contends that Bellew owes him $275,686.20. Rather than produce either his own records of loans and investments in Bellew, or Bellew's ledgers where the shareholder account was recorded, the Debtor has gone through Bellew's bank records and given himself credit for certain deposits including an initial deposit of $1.8 million and a subsequent deposit of $1 million. It does not appear that these funds came from the Debtor. To the contrary, it appears that these cash receipts came from affiliated companies and were recorded by Bellew as equity investments. On

the opposite side of the ledger, the Debtor lists payments made from Bellew's bank to his daughter's private school (total $136,000) and his rowing club in Philadelphia (total $57,000) as charitable contibutions. The Debtor has not produced any evidence to show how these cash disbursements were recorded on Bellew's books; for example, whether they were recorded as loans to Mr. Rafter (as would seem proper), charitable contributions or otherwise.

Finally, the Debtor claims that Bellew is owed $11,500,000 from Breen and is under a fiduciary obligation to pursue these assets or assign the claim to the Debtor. In the Debtor's theory, if Bellew could collect from Breen it would not be insolvent. Bellew might then pay a liquidating dividend to the Debtor which he, in turn, could offset against his shareholder loan resulting in a net, zero liability from him to Bellew.

## DISCUSSION

A proof of claim, filed pursuant to 11 U.S.C. § 501, is deemed allowed unless a party in interest objects. It is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-4 (3d Cir. 1992); *Raj Singh v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.)*, 2005 U.S. Dist. LEXIS 13673, *4 (D. Del. July 8, 2005). If a party in interest wishes to object[1], the objector needs to overcome the presumption of validity through submission of evidence. *Id.* If the objecting party advances sufficient evidence to challenge the validity of the proof of claim, the

---

[1] Bellew argues that the Debtor lacks standing to object to its proof of claim. *In re Cult Awareness Network, Inc.*, 151 F.3d 605 (7th Cir. 1998). The court rejected this argument. The Debtor's goal in objecting to Bellew's proof of claim is to show that Bellew is not a creditor and therefore would lack standing to object to his discharge under 11 U.S.C. § 727 in a pending adversary proceeding. That goal gives the debtor a sufficient stake in the outcome to object to Bellew's proof of claim.

burden shifts back to the claimant to prove the claim's validity by a preponderance of the evidence. *Id.*

Bellew's proof of claim references the company's financial statement showing a shareholder loan due from Mr. Rafter of $4,439,009.00. The financial statement was signed by the directors of Bellew, attested to as being accurate and duly approved at a meeting of the Bellew board of directors. That is sufficient documentation to support the claim. The evidence provided by the Debtor is insufficient. The Debtor raised several questions concerning how the shareholder loan amounts set out in the financial statements of Bellew cannot be reconciled with the Caledonian Trust statements and that the Caledonian Trust statements show disbursements to persons other than the Debtor for amounts that may or may not be included in the net shareholder line item on the financial statement in the amount of $4,349,009.00. Neither question constitutes evidence of whether there is or is not any loan due from him or whether the amount is correct. The Debtor has not produced any of his records showing how much he received by way of loans from Bellew and since he contends that a net amount is at issue (insofar as he made loans to Bellew and Bellew made loans to him) he should have some sort of record or documentation. No such evidence has been produced. The Debtor also claims that transfers of money into Bellew by corporations were actually loans made by him or for his benefit to the company. No evidence is cited for this contention other than the Caledonian Trust records.

It should be noted that even in attempting his own characterization of all the transactions shown by the Caledonian Trust records, the Debtor concedes in Exhibit C of his Certification that at least $3.291 million in loans were made by Bellew to him. The only reason the Debtor contends that he does not owe Bellew that amount is because he claims credit for an initial

deposit of $1.8 million, a subsequent payment of $1 million and other payments to Bellew. The Debtor does not deny that there were loan transactions between himself and Bellew; he simply contests that the net amount is different from what Bellew's financial statement shows.

The Debtor's third argument consists of a simple assertion that Bellew owes the Debtor $275,686.20. The only support offered consists of a one page statement relating that the Debtor loaned $3,566,779.29 to Bellew and Bellew loaned $3,291,093.09 to the Debtor, leaving a net amount due to the Debtor of $275,686.20. That one page statement was created by the Debtor solely to support his objection to Bellew's claim and drawn from his re-characterization of the Caledonian Bank records. It is not competent evidence.

The Debtor's fourth contention, that Bellew is owed $11,500,000.00 from the Breen Entities and that Bellew is under fiduciary obligation to pursue or assign its interest to the Debtor, has no bearing on the validity of Bellew's proof of claim against the Debtor. Just because Bellew may have a claim against another entity which would render it solvent, the Debtor's obligations are not eliminated. The Debtor may have dual status as shareholder and debtor to Bellew. While Bellew's pursuit of other claims against other entities would effect the Debtor as shareholder of Bellew, he would also remain in its debt. The Debtor's assertion of Bellew's claim against the Breen Entities fails to overcome the presumptively valid proof of claim Bellew has filed against the Debtor.

**CONCLUSION**

For the reasons discussed above, the Debtor has not met his evidentiary burden in showing cause for the reduction, disallowance or expunction of Bellew's claim.


Dated: May 30, 2007                             /S/ **_Raymond T. Lyons_**
                                                United States Bankruptcy Judge